UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

GARY G. HAMPTON,

         Plaintiff,

   v.

ALKIRE, et al.,

         Defendants.

No. 2: 19-cv-1660 KJN P

ORDER

I. Introduction

     Plaintiff is a state prisoner, proceeding pro se. Plaintiff seeks relief pursuant to 42 U.S.C. § 1983, and has requested leave to proceed in forma pauperis pursuant to 28 U.S.C. § 1915. This proceeding was referred to this court by Local Rule 302 pursuant to 28 U.S.C. § 636(b)(1).

     Plaintiff submitted a declaration that makes the showing required by 28 U.S.C. § 1915(a). Accordingly, the request to proceed in forma pauperis is granted.

     Plaintiff is required to pay the statutory filing fee of $350.00 for this action. 28 U.S.C. §§ 1914(a), 1915(b)(1). By this order, plaintiff will be assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). By separate order, the court will direct the appropriate agency to collect the initial partial filing fee from plaintiff's trust account and forward it to the Clerk of the Court. Thereafter, plaintiff will be obligated to make monthly payments of twenty percent of the preceding month's income credited to plaintiff's trust account.

These payments will be forwarded by the appropriate agency to the Clerk of the Court each time the amount in plaintiff's account exceeds $10.00, until the filing fee is paid in full. 28 U.S.C. § 1915(b)(2).

The court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915A(b)(1), (2).

A claim is legally frivolous when it lacks an arguable basis either in law or in fact. Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th Cir. 1984). The court may, therefore, dismiss a claim as frivolous when it is based on an indisputably meritless legal theory or where the factual contentions are clearly baseless. Neitzke, 490 U.S. at 327. The critical inquiry is whether a constitutional claim, however inartfully pleaded, has an arguable legal and factual basis. See Jackson v. Arizona, 885 F.2d 639, 640 (9th Cir. 1989), superseded by statute as stated in Lopez v. Smith, 203 F.3d 1122, 1130-31 (9th Cir. 2000) ("[A] judge may dismiss [in forma pauperis] claims which are based on indisputably meritless legal theories or whose factual contentions are clearly baseless."); Franklin, 745 F.2d at 1227.

Rule 8(a)(2) of the Federal Rules of Civil Procedure "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). In order to survive dismissal for failure to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the speculative level." Id. at 555. However, "[s]pecific facts are not necessary; the statement [of facts] need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Erickson v. Pardus, 551 U.S. 89, 93 (2007) (quoting Bell Atlantic, 550 U.S. at 555, citations and internal quotations marks omitted).

In reviewing a complaint under this standard, the court must accept as true the allegations of the complaint in question, Erickson, 551 U.S. at 93, and construe the pleading in the light most favorable to the plaintiff. Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds, Davis v. Scherer, 468 U.S. 183 (1984).

II. Plaintiff's Allegations

Named as defendants are Lieutenant Alkire, Sergeant Sylva, Sergeant Hicks and Correctional Officer Garrett. Plaintiff alleges that he is housed on a sensitive needs yard ("SNY") at High Desert State Prison ("HDSP"). (ECF No. 1 at 7.) Plaintiff alleges that there are new "drop out gangs" on his SNY classified as "STG." (Id.) Plaintiff alleges that these gangs are known for extorting sex offenders. (Id.) Plaintiff's convictions apparently involve sex offenses.

On July 20, 2019, a STG gang member named Sammy approached plaintiff and stated that if plaintiff did not give him one hundred dollars by the end of the day, the Northern Riders would attack plaintiff. (Id. at 9, 10.) Plaintiff alleges that this conversation was all on the camera footage for building 5, C Section dayroom. (Id. at 9.)

That evening, plaintiff decided not to go to evening chow. (Id. a 10.) After the building 5 inmates returned from chow, plaintiff gave fake paperwork to several inmates, including the black inmate spokesperson. (Id.) This paperwork apparently falsely described plaintiff's convictions as not involving sex offenses. Plaintiff alleges that the black inmate spokesperson told plaintiff that the black inmates would not allow the STG gang members to hurt or extort him. (Id.)

Plaintiff alleges that an inmate later found plaintiff's on-line records relating to Megan's Law, and everything fell apart. (Id.) Plaintiff alleges that the blacks were about to kick off a riot for him because they believed his paperwork. (Id.) After plaintiff's name was discovered on the Megan's Law web site, plaintiff's life was in danger. (Id.) Plaintiff did not leave his cell for six days. (Id.)

Plaintiff finally snuck to the B-yard program office. (Id.) Plaintiff explained everything to defendant Sylva. (Id.) Defendant Sylva shut plaintiff down and claimed that plaintiff made everything up. (Id. at 10-11.) Defendant Sylva told plaintiff that being a sex offender on a SNY was not a safety concern. (Id. at 11.) Defendant Sylva ordered plaintiff to return to his building.

3

(Id.) Plaintiff refused. (Id.) Plaintiff was cuffed and removed from the program office. (Id.)

Plaintiff went suicidal. (Id.) When plaintiff explained everything to Mental Health, they quickly typed a report and returned plaintiff to the program office. (Id.) With this report, defendant Sylva was forced to open up a safety concern investigation. (Id.) Defendant Alkire made defendant Garrett plaintiff's investigative employee for the investigation. (Id.) Plaintiff claims that defendant Garrett refused to document plaintiff's safety concerns. (Id.) Defendant Garrett only wrote that plaintiff obtained a gambling debt that he was unable to pay and was threatened by Sammy out of B5-244. (Id.)

Plaintiff was placed in the "hole" pending the investigation. (Id.) If the investigation verified that plaintiff was gambling and approached by inmate Sammy, plaintiff would be transferred to another prison. (Id.)

On August 1, 2019, plaintiff went to committee. (Id.) The committee recommended that plaintiff be returned to B yard because plaintiff's safety concerns were deemed unreliable. (Id.) Plaintiff was told that defendants Garrett and Alkire both reviewed the video footage and claimed that plaintiff never made contact with an inmate named Sammy out of B5-244. (Id.) Plaintiff claims that defendants Garrett and Alkire falsified documents regarding his safety concerns. (Id.)

Plaintiff was then placed in Building 2 and housed with a STG gang member who had just gotten out of the Security Housing Unit ("SHU") for stabbing another inmate in August 2018. (Id. at 12.) Plaintiff's new cellmate demanded to see plaintiff's paperwork and wanted to know why he was in prison and coming from the hole. (Id.) Plaintiff lied and started thinking of a way to get to safety. (Id.)

A few hours later, plaintiff's new cellmate received a kite from an inmate named Shorty indicating that plaintiff was all bad and owed the Northern Riders a lot of money. (Id.) The kite indicated that if plaintiff did not pay the money back, he (Shorty) was going to have to remove plaintiff from the yard with force. (Id.) Plaintiff alleges, "he gave me a opinion to get off the yard or be attacked." (Id.)

The next morning, plaintiff staged a fight with inmate Collins because he knew if he just went to the program office, they would throw him to the wolves. (Id.) Inmate Collins signed a

4

form stating that he and plaintiff could program safely together. (Id.) Plaintiff refused to sign an A-12 form stating that he and inmate Collins could program safely together. (Id.) Prison officials searched for the kite his cellmate received from inmate Shorty. (Id.) After the kite was found, plaintiff was taken to see defendant Hicks at 8:30 a.m. (Id.) Defendant Hicks told plaintiff that he did not believe plaintiff's safety concerns. (Id. at 4.) Defendant Hicks told plaintiff that plaintiff was going back to the hole because plaintiff refused to sign the A-12 form regarding the inmate plaintiff had just assaulted. (Id.)

Plaintiff claims that he asked defendant Hicks about the kite that was found indicating that his life was in danger. (Id.) Defendant Hicks denied all knowledge of the kite. (Id.) Plaintiff claims that the officer who found the kite immediately took it to defendant Hicks.

After discussing his safety concerns with defendant Hicks, plaintiff was placed in the office cage at around 9:00 a.m. without cuffs or any restraints. (Id. at 13.) Plaintiff was told that he was returning to the hole. (Id.) Hours later, defendant Alkire arrived and told plaintiff to turn around and cuff-up because plaintiff was returning to B yard. (Id.) Plaintiff said, "No, I'm not." (Id.) During this conversation, plaintiff told defendant Alkire that he wanted to sign a form declaring his cellmate and inmate Collins as his enemies. (Id. at 4.) Apparently, this declaration may also be made on a A-12 form. (Id.) Plaintiff claims that both defendants Hicks and Alkire would not allow him to sign this form. (Id.)

Plaintiff and defendant Alkire went back and forth arguing until plaintiff said, "Go ahead and bring the force, tase me, beat me, do what you got to do cause I'm not going back to B yard." (Id.) Defendant Alkire leaned forward and said, "So, you're going to kill one of my officers." (Id.) Plaintiff laughed and said, "take it how you want." (Id.)

Defendant Alkire made a phone call. (Id.) Fifteen minutes later, I.S.U. arrived, cuffed plaintiff up and escorted plaintiff to a secure location to take his statement for their D.A. referral. (Id.) Plaintiff refused to talk so they ended the interview. (Id.) The I.S.U. officers then spoke secretly with defendants Hicks and Alkire. (Id.) At that point, defendants Hicks and Alkire changed their story regarding when plaintiff made the staff threat. (Id.) Plaintiff was placed in the hole. (Id.)

1 | The disciplinary report charging plaintiff with making a staff threat falsely states that
2 | plaintiff made a threat to defendant Hicks during the initial safety concern interview at 8:30 a.m.
3 | (Id. at 14.) Correctional Officer Gonzales and defendant Hicks claim that as soon as plaintiff
4 | made this threat, plaintiff was handcuffed in defendant Hicks' office then put in the program
5 | office cage. (Id.) The disciplinary report states that plaintiff made another staff threat to
6 | defendant Alkire while in the cage. (Id.)

Plaintiff claims that there are strict protocols for staff threats. (Id.) Once a staff threat is made, the inmate must be cuffed up and escorted everywhere "2 on 1." (Id.) Plaintiff alleges that the video footage will show that when plaintiff left defendant Hicks' office following the 8:30 a.m. meeting, he was not handcuffed or escorted "2 on 1." (Id.) Plaintiff claims that I.S.U. was not called until around noon, although defendant Hicks claims that plaintiff made the first staff threat at around 8:30 a.m. (Id.)

Plaintiff claims that defendants are lying and trying to "ruin him" because plaintiff forced the B-yard program office to open up a safety concern investigation through mental health. (Id.) Plaintiff alleges that he is in constant fear of the STG gang members and the HDSP officers. (Id.) Plaintiff alleges that he had a melt-down while in the hole based on fear that he was going to have to return to B yard. (Id.)

Plaintiff claims that one morning, while in the hole, plaintiff was taken to Sergeant Pearson's office. (Id. a 15.) Sergeant Pearson was very concerned about plaintiff's situation. (Id.) Sergeant Pearson observed that while at HDSP, plaintiff had not received one single write-up until this situation. (Id.) After plaintiff explained his situation, Sergeant Pearson told plaintiff not to worry. (Id.) Sergeant Pearson told plaintiff that he would issue an investigative employee to plaintiff who could be trusted to verify and document plaintiff's safety concerns. (Id.)

The next day, plaintiff had a safety concern interview with investigative employee Correctional Officer Folsom. (Id.) Plaintiff told Correctional Officer Folsom the same things he had told defendants Sylva, Hicks and Garrett. (Id.) Forty-eight hours later, Correctional Officer Folsom deemed plaintiff's safety concerns to be valid. (Id.)

////

III. Discussion

Plaintiff's complaint contains three claims. In claim one, plaintiff claims that his safety was jeopardized by the falsification of documents by defendants Garrett and Alkire. In claim two, plaintiff claims that defendants Alkire and Hicks got rid of evidence of his safety concerns, i.e., the kite. Plaintiff also claims that defendants Alkire and Hicks refused his right to "A-12" his enemies. Claims one and two appear to allege that defendants violated the Eighth Amendment by failing to protect plaintiff from harm by other inmates.

The third claim alleges that defendant Hicks filed false disciplinary charges against plaintiff.

### A. Failure to Protect

*Legal Standard*

The Eighth Amendment prohibits "the infliction of 'cruel and unusual punishments' on those convicted of crimes." Wilson v. Seiter, 501 U.S. 294, 296–97 (1991) (citation omitted). Under the Eighth Amendment, prison officials have a duty "to protect prisoners from violence at the hands of other prisoners." Farmer v. Brennan, 511 U.S. 825, 833 (1994) (citations omitted); Hearns v. Terhune, 413 F.3d 1036, 1040 (9th Cir. 2005) (same) (citing id.). A prison official violates this duty when (1) a prison inmate is incarcerated under conditions that objectively pose a substantial risk of serious harm from another inmate; and (2) the official responds with deliberate indifference—i.e. subjectively knows of the risk an inmate is facing and deliberately "disregards that risk by failing to take reasonable measures to abate it." See Farmer, 511 U.S. at 837, 847.

To act with deliberate indifference, an official must be subjectively "aware of facts from which the inference could be drawn that [the inmate faces] a substantial risk of serious harm," and actually draw such an inference. See id. at 837. That an official "should have been aware" of a particular risk to an inmate, but was not, does not establish an Eighth Amendment violation "no matter how severe the risk." Peralta v. Dillard, 744 F.3d 1076, 1086 (9th Cir. 2014) (citation and internal quotation marks omitted; emphasis in original). Mere negligence or civil recklessness does not violate the Eighth Amendment. See Farmer, 511 U.S. at 835–47.

////

7

*Discussion-Claim One*

Claim one appears to be based on plaintiff's allegation that defendants Garrett and Alkire falsely claimed that video footage did not show plaintiff making contact with an inmate named Sammy out of B5-244. At the outset, the undersigned finds that inmate Sammy's alleged threat to attack plaintiff if plaintiff did not pay him one hundred dollars constituted a substantial risk of serious harm to plaintiff.

Plaintiff claims that his contact with inmate Sammy was on the AVSS camera footage of building 5 C-section day room, between the hours of 1:00 p.m. and 3:30 p.m. (ECF No. 1 at 9.) Plaintiff claims that this footage showed plaintiff exiting his cell around 1:00 p.m. and sitting down to play cards in B5 C-section when inmate Sammy approached him. (Id. at 10.) Plaintiff claims that "these officers," i.e., defendants, were lying because plaintiff forced the B-yard program office to open up a safety concern investigation through mental health. (Id. at 14.) Plaintiff claims that Officer Pearson later found plaintiff's safety concerns to be valid. (Id. at 15.)

Plaintiff has pled sufficient facts to state a potentially colorable Eighth Amendment claim against defendants Garrett and Alkire.

*Discussion-Claim Two*

In claim two, plaintiff claims that defendants Alkire and Hicks got rid of evidence of his safety concerns, i.e., the kite written by inmate Shorty stating that inmate Shorty would remove plaintiff from the yard if plaintiff did not pay the money back. Plaintiff also claims that defendants Alkire and Hicks refused plaintiff's request to declare inmate Collins and his cellmate as enemies.

The undersigned first considers plaintiff's claim that defendants Alkire and Hicks got rid of the kite. Plaintiff alleges that defendant Hicks denied knowledge of the kite, although it had been brought to him by the officer who found it and ordered plaintiff back to the hole. These allegations state a potentially colorable Eighth Amendment claim against defendant Hicks.

Plaintiff has pled no facts demonstrating that defendant Alkire had knowledge of the kite written by inmate Shorty. For this reason, plaintiff has not stated a potentially colorable Eighth

Amendment claim against defendant Alkire regarding the kite.

Plaintiff alleges that defendants Hicks and Alkire refused to allow plaintiff to declare inmate Collins and his cellmate as his enemies. Plaintiff alleges that inmate Collins, the inmate he assaulted, signed a form stating that he and plaintiff could program together. Because plaintiff admits that he staged the fight with inmate Collins, and inmate Collins signed the form stating that he could program with plaintiff, the undersigned finds that plaintiff did not face a serious risk of harm from inmate Collins. For this reason, defendants' alleged refusal to allow plaintiff to declare inmate Collins as an enemy does not state a potentially colorable Eighth Amendment claim.

Plaintiff claims that his cellmate received the kite from inmate Shorty stating that inmate Shorty would attack plaintiff if plaintiff did not the money back. While plaintiff may have faced a threat of harm from inmate Shorty based on the information in the kite, plaintiff does not clearly allege that he faced a threat of harm from his cellmate. Plaintiff does not allege that he informed defendants of any specific threat of harm that he faced from his cellmate. For these reasons, plaintiff has not stated a potentially colorable Eighth Amendment claim against defendants Hicks and Alkire based on these allegations.

B. Alleged False Disciplinary Charges

Plaintiff claims that defendant Hicks falsely charged him with making a staff threat at 8:30 a.m.

The issuance of a false rules violation report, alone, does not state a claim under section 1983. Contreras v. Herrera, 2018 WL 4961510 at * 4 (S.D. Cal. 2018). "Instead, claims of arbitrary action by prison officials must be grounded in 'the procedural due process requirements as set forth in Wolff v. McDonnell.'" Id. (quoting Murschel v. Paramo, 2018 WL 539159 at *5 (S.D. Cal. 2018).

> "[T]here is no due process right to be free from false disciplinary charges," Solomon v. Meyer, 2014 WL 294576, at *2 (N.D. Cal. 2014), because "[t]he Constitution demands due process, not error-free decision-making." Chavira v. Rankin, 2012 WL 5914913, at *1 (N.D. Cal. 2012); see also Johnson v. Felker, 2013 WL 6243280, at *6 (E.D. Cal. 2013) ("Prisoners have no constitutionally guaranteed right to be free from false accusations of misconduct, so the mere

9

> falsification of a [rules violation] report does not give rise to a claim under section 1983.") (citing Sprouse v. Babcock, 870 F.2d 450, 452 (8th Cir. 1989) and Freeman v. Rideout, 808 F.2d 949, 951-53 (2d Cir. 1986) ).

Id.

Based on the law cited above, the undersigned finds that plaintiff's claim that defendant Hicks filed false disciplinary charges does not state a potentially colorable claim for relief.

### C. Defendant Sylva

While plaintiff's complaint contains allegations against defendant Sylva, the complaint makes no legal claims against defendant Sylva. For this reason, defendant Sylva is dismissed with leave to amend. If plaintiff files an amended complaint, he shall clarify the legal claims he is making against defendant Sylva.

## IV. Conclusion

Plaintiff may proceed forthwith to serve defendants Garrett, Alkine and Hicks with those claims found potentially colorable above, or he may delay serving any defendant and attempt to state a cognizable claim against Sylva and amend those claims found not potentially colorable against defendants Alkine and Hicks.

If plaintiff elects to attempt to amend his complaint to cure the pleading defects discussed above, he has thirty days in which to do so. He is not obligated to amend his complaint.

If plaintiff elects to proceed forthwith against defendants Garrett, Alkine and Hicks, against whom he has stated potentially cognizable claims for relief, he shall return the attached notice within thirty days. Following receipt of that notice, the court will order service of defendants Garrett, Alkine and Hicks.

Plaintiff is advised that in an amended complaint he must clearly identify each defendant and the action that defendant took that violated his constitutional rights. The court is not required to review exhibits to determine what plaintiff's charging allegations are as to each named defendant. The charging allegations must be set forth in the amended complaint, so defendants have fair notice of the claims plaintiff is presenting.

////

Any amended complaint must show the federal court has jurisdiction, the action is brought in the right place, and plaintiff is entitled to relief if plaintiff's allegations are true. It must contain a request for particular relief. Plaintiff must identify as a defendant only persons who personally participated in a substantial way in depriving plaintiff of a federal constitutional right. Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (a person subjects another to the deprivation of a constitutional right if he does an act, participates in another's act or omits to perform an act he is legally required to do that causes the alleged deprivation). If plaintiff contends he was the victim of a conspiracy, he must identify the participants and allege their agreement to deprive him of a specific federal constitutional right.

In an amended complaint, the allegations must be set forth in numbered paragraphs. Fed. R. Civ. P. 10(b). Plaintiff may join multiple claims if they are all against a single defendant. Fed. R. Civ. P. 18(a). If plaintiff has more than one claim based upon separate transactions or occurrences, the claims must be set forth in separate paragraphs. Fed. R. Civ. P. 10(b).

The federal rules contemplate brevity. See Galbraith v. County of Santa Clara, 307 F.3d 1119, 1125 (9th Cir. 2002) (noting that "nearly all of the circuits have now disapproved any heightened pleading standard in cases other than those governed by Rule 9(b)"); Fed. R. Civ. P. 84; cf. Rule 9(b) (setting forth rare exceptions to simplified pleading). Plaintiff's claims must be set forth in short and plain terms, simply, concisely and directly. See Swierkiewicz v. Sorema N.A., 534 U.S. 506, 514 (2002) ("Rule 8(a) is the starting point of a simplified pleading system, which was adopted to focus litigation on the merits of a claim."); Fed. R. Civ. P. 8. Plaintiff must not include any preambles, introductions, argument, speeches, explanations, stories, griping, vouching, evidence, attempts to negate possible defenses, summaries, and the like. McHenry v. Renne, 84 F.3d 1172, 1177-78 (9th Cir. 1996) (affirming dismissal of § 1983 complaint for violation of Rule 8 after warning); see Crawford-El v. Britton, 523 U.S. 574, 597 (1998) (reiterating that "firm application of the Federal Rules of Civil Procedure is fully warranted" in prisoner cases). The court (and defendant) should be able to read and understand plaintiff's pleading within minutes. McHenry, 84 F.3d at 1179-80. A long, rambling pleading including many defendants with unexplained, tenuous or implausible connection to the alleged

11

constitutional injury, or joining a series of unrelated claims against many defendants, very likely will result in delaying the review required by 28 U.S.C. § 1915 and an order dismissing plaintiff's action pursuant to Fed. R. Civ. P. 41 for violation of these instructions.

A district court must construe a pro se pleading "liberally" to determine if it states a claim and, prior to dismissal, tell a plaintiff of deficiencies in his complaint and give plaintiff an opportunity to cure them. See Lopez, 203 F.3d at 1130-31. While detailed factual allegations are not required, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)). Plaintiff must set forth "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft, 556 U.S. at 678 (quoting Bell Atlantic Corp., 550 U.S. at 570).

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

Ashcroft, 556 U.S. at 678 (citations and quotation marks omitted). Although legal conclusions can provide the framework of a complaint, they must be supported by factual allegations, and are not entitled to the assumption of truth. Id. at 1950.

An amended complaint must be complete in itself without reference to any prior pleading. Local Rule 220; See Ramirez v. County of San Bernardino, 806 F.3d 1002, 1008 (9th Cir. 2015) ("an 'amended complaint supersedes the original, the latter being treated thereafter as non-existent.'" (internal citation omitted)). Once plaintiff files an amended complaint, the original pleading is superseded.

////
////
////
////

By signing an amended complaint, plaintiff certifies he has made reasonable inquiry and has evidentiary support for his allegations, and for violation of this rule the court may impose sanctions sufficient to deter repetition by plaintiff or others. Fed. R. Civ. P. 11.

A prisoner may bring no § 1983 action until he has exhausted such administrative remedies as are available to him. 42 U.S.C. § 1997e(a). The requirement is mandatory. Booth v. Churner, 532 U.S. 731, 741 (2001). California prisoners or parolees may appeal "departmental policies, decisions, actions, conditions, or omissions that have a material adverse effect on the[ir] welfare. . . ." Cal. Code Regs. tit. 15, §§ 3084.1, et seq. An appeal must be presented on a CDC form 602 that asks simply that the prisoner "describe the problem" and "action requested." Therefore, this court ordinarily will review only claims against prison officials within the scope of the problem reported in a CDC form 602 or an interview or claims that were or should have been uncovered in the review promised by the department.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's request for leave to proceed in forma pauperis is granted.

2. Plaintiff is obligated to pay the statutory filing fee of $350.00 for this action. Plaintiff is assessed an initial partial filing fee in accordance with the provisions of 28 U.S.C. § 1915(b)(1). All fees shall be collected and paid in accordance with this court's order to the Director of the California Department of Corrections and Rehabilitation filed concurrently herewith.

3. Claims against defendants Sylva, and those claims found not potentially colorable against defendants Alkine and Hicks above, are dismissed with leave to amend. Within thirty days of service of this order, plaintiff may amend his complaint to attempt to state cognizable claims against these defendants. Plaintiff is not obliged to amend his complaint.

4. The allegations in the pleading are sufficient to state a cognizable claim against defendants Alkine, Hicks and Garrett. See 28 U.S.C. § 1915A. If plaintiff opts to proceed on his original complaint as to these defendants, he shall return the attached notice within thirty days of service of this order.

////

5. Failure to comply with this order will result in a recommendation that this action be dismissed.

Dated: August 30, 2019

_Kendall J. Newman_
KENDALL J. NEWMAN
UNITED STATES MAGISTRATE JUDGE

Hamp1660.14

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GARY G. HAMPTON,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>ALKIRE, et al.,<br><br>　　　　Defendants. | No. 2: 19-cv-1660 KJN P<br><br><br>NOTICE |

_____ Plaintiff opts to proceed with the original complaint as to defendants Alkire, Garrett and Hicks. Plaintiff consents to the dismissal of defendant Sylva and those claims found not potentially colorable against defendants Alkire and Hicks without prejudice.

OR

_____ Plaintiff opts to file an amended complaint and delay service of process.

DATED:

　　　　　　　　　　　　　　　　　　　_____
　　　　　　　　　　　　　　　　　　　Plaintiff